ROBERT HOE & another *vs.* REX MANUFACTURING COMPANY & another.

UNITED CORK AND SEAL COMPANY *vs.* ROBERT HOE & another.

Norfolk.    January 17, 1910. — February 24, 1910.

Present : KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Sale,* Conditional.   *Contract,* Performance and breach, Validity.

The owner of certain chattels made with one desiring to purchase them an agreement in writing whereby the chattels were to be delivered to the prospective purchaser, the title remaining in the vendor "until the same shall have been fully paid for," the vendee to have the use of them meanwhile and to care for them and keep them in repair, to give to the vendor access to them at any time for purposes of inspection and repair but not to permit any one else to use them, to keep them insured for the vendor's benefit, and to pay a certain sum down and certain other sums making up the balance of the purchase price with interest in quarterly instalments. It also was provided that the vendee should give certain notes corresponding in amount and times of payment and rate of interest to the quarterly payments to be made by him, " as collateral to the payment for said chattels," and that " on the payment of any one of the said notes the instalment corresponding thereto shall be deemed paid, and the said " vendor is " at liberty to dispose of any or all of said notes before or after maturity." On full performance of the agreement, the title to the chattels was to vest in the vendee, but " on failure " by the vendee " to keep the terms " of the agreement, the vendee was to give the vendor access to the chattels and to make no opposition to a removal of them. After having failed to pay several of the instalments, the vendee assigned his rights under the agreement to one who knew of its terms and to whom, through a third person, he also conveyed and gave possession of the premises where the chattels were. The vendor, while still retaining possession of the vendee's notes, replevied the chattels, and the vendee's assignee brought an action of tort or contract against the vendor, contending that the taking was wrongful. *Held,* that the agreement could not be said to be in violation of morality or against public policy, that, the notes being given " as collateral," the vendor did not have to deliver them up or rescind the contract before taking possession of the chattels, and that the taking, having been made after the vendee had broken the terms of the contract, was lawful.

REPLEVIN of certain chattels alleged to be detained by the Rex Manufacturing Company and Edward J. Stewart. Writ dated November 4, 1907 ; also

TORT OR CONTRACT, with a declaration in six counts, alleging that the taking of the chattels in the replevin suit was unlawful, and seeking damages. Writ dated August 15, 1908.

The two cases were heard together by *Crosby*, J., without a jury. The following facts were agreed upon:

The plaintiffs in the action of replevin and the Rex Manufacturing Company, on July 19, 1906, made an agreement in writing substantially as follows:

" Whereas, the said Rex Manufacturing Company is desirous of purchasing from the said R. Hoe & Co. the following described chattels [here followed a schedule which included the chattels replevied] . . . and the said R. Hoe & Co. on their part, are desirous of selling the said chattels to the said Rex Manufacturing Company; and

" Whereas the parties hereto desire that the title to the said chattels shall remain vested in the said R. Hoe & Co., until the same shall have been fully paid for, and that the said Rex Manufacturing Company, while paying the consideration hereinafter specified and complying with and keeping terms of this agreement, use said chattels in the usual course of its business, at its present place of business in . . . Boston. . . .

" Now, therefore, the said Rex Manufacturing Company agrees with R. Hoe & Co. to purchase the said chattels of them and to pay therefor the sum of $4,338.00 as follows: [here follow stipulations for a certain payment down and quarterly payments of principal and interest thereafter]. . . .

" The said Rex Manufacturing Company further agrees with R. Hoe & Co. to pay all taxes which may be levied or assessed on or on account of said chattels while this agreement is in force, and to keep the same in good order, reasonable wear and tear excepted, and to allow the said R. Hoe & Co., their servants and agents, free access thereto to inspect the condition thereof, and for the purpose of putting and keeping the same in good order, and to pay all reasonable expenses and charges therefor and for all materials, machines and parts furnished by the said R. Hoe & Co., to be used in connection with said chattels; and to pay all sums that said R. Hoe & Co. shall expend in taking out policies of insurance on said chattels, in such companies, of such form and in such amount as shall be satisfactory to the said R. Hoe & Co.; and agrees not to remove said chattels from its present place of business without the written consent of said R. Hoe & Co. except in case of fire or other calamity, and agrees,

on failure to keep the terms hereof, to afford to the said R. Hoe & Co., and their servants and agents, access to the said chattels for the purpose of removing the same, and not to oppose such taking or removal, or to make any claim for tort or trespass arising therefrom or connected therewith, and to protect the said R. Hoe & Co., their servants and agents, from all injury, damage or loss by or by reason of said chattels, reasonable wear and tear excepted, happening while this agreement is in force, except as so far as they are compensated by insurance.

" In the event of loss or damage by fire, the said R. Hoe & Co. will pay to the said Rex Manufacturing Company any balance from sums collected on insurance policies, after deducting all sums owing by the said Rex Manufacturing Company to the said R. Hoe & Co., whether then due or not, together with the expenses of the collection of the same.

" As collateral to the payment for said chattels, the said Rex Manufacturing Company herewith deliver to the said R. Hoe & Co. their six certain promissory notes, [corresponding in amounts, dates when due and rate of interest to the quarterly payments to be made by the vendee] . . . payable to the order of R. Hoe & Co.; on the payment of any one of the said notes the instalment corresponding thereto shall be deemed paid, and said R. Hoe & Co. are at liberty to dispose of any or all of said notes before or after maturity. The said R. Hoe & Co. acknowledge the receipt of said notes as collateral, and grant to the said Rex Manufacturing Company, while keeping the terms of this agreement, the right to use the said chattels; and agree that upon the full performance of all of the terms hereof the title to said chattels shall vest in the said Rex Manufacturing Company without further act, and the policies of insurance issued in the name of said R. Hoe & Co. shall be transferred to the said Rex Manufacturing Company.

" It is further expressly provided and agreed that no other than the said Rex Manufacturing Company shall use the said chattels and that in the event of any use by others, or of any unauthorized removal of said chattels, or of attachments thereof, the said R. Hoe & Co. may take possession, without prejudice to their rights hereunder, or liability for tort or trespass for so doing, and that until the full performance of all the terms hereof,

the said chattels shall remain the property of the said R. Hoe & Co., and upon the full performance of all the terms hereof, the title to said chattels, without further act, shall vest in said Rex Manufacturing Company, and that until, and except in case of full performance of all of the terms hereof, all acts of part performance are and shall be deemed to be done on account of the use of, or right to use, the said chattels.

" And it is further agreed that if the insurance collected in case of loss is less than the amount unpaid under this agreement, or if the said Rex Manufacturing Company fail to keep the terms hereof, and said R. Hoe & Co. re-take the chattels pursuant to the terms hereof, and the said chattels are of less value than the amount unpaid hereunder, the said Rex Manufacturing Company will pay unto the said R. Hoe & Co. the said difference."

The Rex Manufacturing Company paid one of the notes. The rest, though due, were not paid and were in the possession of R. Hoe and Company.

There was evidence tending to show that the Rex Manufacturing Company in April, 1907, had conveyed the premises where the chattels were situated to Stewart, the second defendant in the action of replevin, as trustee for certain bondholders of the company and also had given him possession; that on October 18, 1907, by an instrument under seal the Rex Manufacturing Company assigned to the United Cork and Seal Company, the plaintiff in the second action, all its right under the contract between it and R. Hoe and Company, and on October 22, 1907, Stewart as trustee executed and delivered a deed of the premises where the chattels were situated to the same company.

At the close of the evidence the defendants in the action of replevin asked the judge to rule that on all the evidence there should be a finding for them and that they were entitled to an order for the return of the replevied property ; and the plaintiffs in the second action asked for the following rulings :

" 1. On all the evidence the verdict must be for the plaintiff.

" 2. If the defendants were entitled to take possession of the personal property in question at the time they did, such taking did not rescind the contract between them and the Rex Manu-

facturing Company, and there is no evidence in the case justifying a finding that such contract was ever rescinded.

" 3. Said contract could not be rescinded by the defendants without first returning or offering to return to the Rex Manufacturing Company or the plaintiff the notes of the former held by the defendants, and the money received under said contract less a reasonable charge for rental and depreciation of the property."

The rulings asked for all were refused, and the judge found for the plaintiffs in replevin and for the defendants in the second action. The defendants in replevin and the plaintiff in second action alleged exceptions.

The case was submitted on briefs.

*H. T. Richardson*, for the defendants in the first action and the plaintiff in the second action.

*G. W. Estabrook*, for the plaintiffs in the first action and the defendants in the second action.

BRALEY, J.    In these cases, the rights of the parties depend on the written agreement under which the chattels described in the writ of replevin were sold and delivered to the defendant corporation.    It is evident upon perusal of the contract, that the negotiable promissory notes were not given or accepted in payment of the purchase price, but only taken as collateral security. Until the consideration had been fully paid in money, it is also expressly provided, that the title was not to pass, but remained vested in the vendor, while any sums paid and received in part performance " shall be deemed to be done on account of the use of, or right to use, the said chattels."    If upon default the chattels had been taken without suit, no action to recover back the payments could have been maintained.    *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500, 506.    Upon failure of performance, the vendor therefore rightfully could appropriate the partial payments in satisfaction of the rental value of the property during the time it was held and used by the vendee, and retake the property, even if the notes, not having been negotiated although negotiation was permitted, were not tendered to the maker either before suit or at the trial.    Nor were they bound, as the defendants contend, to show rescission.    The contract being conditional with the conditions unperformed, and

there having been no election to treat the sale as absolute, the plaintiffs' title to the property never had been devested. *Marston* v. *Baldwin*, 17 Mass. 606. They also could resell, either before or after taking possession. *Hubbard* v. *Bliss*, 12 Allen, 590. However improvident from the vendee's present point of view some of its provisions may have been, it cannot be said that the contract was violative of morality or against public policy, and no reason appears why it should not be enforced. *Benner* v. *Puffer*, 114 Mass. 376. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391. The vendee having defaulted, the plaintiffs could maintain replevin against the defendants, by whom the judge upon the evidence was warranted in finding the property was unlawfully held and detained. *Cottrell & Sons Co.* v. *Carter, Rice & Co.* 173 Mass. 155.

It follows from what has been said, that in the second case the plaintiff, who purchased with knowledge of the agreement, is bound by its terms and acquired no rights which it could assert in bar of the enforcement of the defendants' title. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway*, 187 Mass. 500.

The various rulings requested at the trial, to the refusal of which the defendants in the first case and the plaintiff in the second case excepted, were properly denied, and the exceptions must be overruled.

*So ordered.*